### John Hogan & wife *vs.* Maria Grosvenor.

A will, written by the testator's hand and signed by him, had, at the end thereof, the usual words, " signed, sealed, published and declared by the abovenamed E. to be his last will," &c., and the names of three attesting witnesses under those words. The first and third attesting witnesses testified that they subscribed their names thereto, at different times, at the testator's request and in his presence, and that he declared to each of them that the paper was his last will: The first witness testified, also, that he saw the testator's signature to the paper: The second attesting witness testified that the testator asked him to sign the paper, and pointed out to him the place where he wished him to put his name, viz. under the aforesaid words, " signed, sealed," &c., and that he signed his name there, in the testator's presence, but that he did not know what the paper was, and did not notice the signature of the testator, nor of the previous attesting witness, though he surmised that it was the testator's will. *Held,* that upon this testimony, and such inferences as a jury might make from it, a verdict finding that the will was duly executed, should be sustained.

This was an appeal from a decree of the judge of probate for the county of Hampden, allowing an instrument as

the last will of Ethan Button.    The reason assigned for the appeal was, that " the execution of the said will, and the publication thereof, were not duly attested by three competent witnesses."

At the trial before *Dewey*, J. after the testimony of the three subscribing witnesses to the instrument (which is hereinafter stated in the opinion of the court) was introduced, the appellants' counsel contended that it was not competent for the jury, upon that testimony, to find that the instrument was duly executed.    But the judge ruled that the testimony was proper to be submitted to the jury.    It was thereupon agreed by the parties, that if, upon said testimony and such inferences as the jury might make from it, a verdict, finding that the will was duly executed, would be sustained by the whole court, the instrument should be approved and allowed as the last will of said Button.

*Boise & H. Morris*, for the appellants.

*R. A. Chapman*, for the appellee.

HUBBARD, J.    The question in this case is, whether the will of Ethan Button was legally attested by three competent witnesses.    The will was in the hand writing of the testator, and two of the witnesses, the first and the last signer, testified that, at the time of their signing as witnesses, respectively, the testator declared the paper to be his last will ; and the first witness remembers to have seen the signature of the testator to it.    The doubt which is raised arises upon the testimony of Laban Button, one of the witnesses, who was the second signer.    He testified that, not far from November 20th 1843, (the will bears date November 22d 1843,) being at the testator's house, he was requested by him to go into another room, and that he went accordingly ; and that the testator took said instrument from his desk, and asked the witness to sign it, and pointed to the place where he wished him to put his name. But he testified that he did not know what the paper was, and did not notice the signature of the testator or of the previous witness ; that he saw writing, but could not state what it was ; that he surmised that it was said Button's will ; that said But-

ton, a few weeks after, told the witness he had made his will and stated some of its provisions, which are found in the instrument now before us.

We think the evidence was proper to be submitted to the jury, to decide whether the will was duly attested. The will contained the usual words at the close, "signed, sealed, published and declared by the abovenamed Ethan Button to be his last will and testament," &c. The testator pointed out the place where he wished the second witness to sign, and the witness signed as requested. We think, from this pointing out the place under the words written, the jury might rightfully have inferred a publication of the paper as his will, as well as a request to sign it. The words of the statute require no particular form of expression, nor declaration of the testator, but an attestation and subscription of the witnesses in the presence of the testator. The decisions have been various; but we consider the law as settled, that the testator need not execute the instrument in the presence of the witnesses; that they need not sign in the presence of each other; and that all which is required is, that the testator shall see their attestation, or be in a situation where he can see it. His acknowledgment that the instrument is his, with a request that they attest it, is sufficient. The English cases are very clear in regard to it. The cases of *White* v. *Trustees of the British Museum*, 6 Bing. 310, and *Wright* v. *Wright*, 7 Bing. 457, decide that the instrument is sufficiently attested, although none of the witnesses saw the testator's signature, and only one of them knew what the paper was. See also *Peate* v. *Ougly*, Com R. 197. *Johnson* v. *Johnson*, 3 Tyrw. 73, and 1 Crompt. & Mees. 140. Our *St.* 1783, *c.* 24, § 2, agrees with that of 29 Car. 2, *c.* 3, § 5, under which the above cited decisions were made; and it is not altered by the Rev. Sts. *c.* 62, § 6, in any material point.

The case at bar does not differ in substance from that of *Dewey* v. *Dewey*, 1 Met. 349, where one of the witnesses could not recollect any thing more than signing his name, but another of the witnesses, who signed at the same time, testified that the testator spoke of the paper as his will.

The tendency of the later cases, both in England and this country, has been to give the words of the statute their simple meaning; that a signing by the witnesses, in the testator's presence, to a paper acknowledged by him, in some satisfactory manner, to be his, is a sufficient compliance with the terms of the statute. It meets its provisions; it identifies the paper executed; it shows it to be his. And as to its contents, the witnesses are not called upon to know them; nor is it necessary they should, in order to judge of his capacity to execute the paper. The request to sign is evidence, among other things, of a disposing mind, if there is no incapacity. And in the present case, the testator wrote the will with his own hand, and requested all the witnesses to attest his signature; to two of them he declared, in terms, that it was his will; and to the other he at least pointed out the place where he should put his signature, at which place his intention was made known, if the witness chose to read what he was called to attest to. He was in a situation to know the nature of the instrument, and his surmising that it was a will may be the imperfect recollection of what was then communicated to him.

The English statute of Car. 2 has been altered by *St.* 1 Victoria, *c.* 26, § 9, which designates the place where the testator shall put his name, and requires that "such signature shall be made or acknowledged by the testator in the presence of two or more witnesses, present *at the same time;* and such witnesses shall attest and shall subscribe the will in the presence of the testator; but no form of attestation shall be necessary." The revised statutes of New York provide that the testator shall *declare* the instrument to be his last will and testament. These statutes, enacted after the numerous decisions upon the preëxisting statutes, show an intention to alter the law in those particulars, and thus give effect to the former constructions and decisions.

It was argued, in this case, that acts equivalent to an acknowledgment are open to the mischiefs intended to be prevented by requiring the solemn attestation of wills. But if

they are so, we think the present is a case where the facts proved will justify the inference that there was a due acknowledgment of the instrument.    And if mischiefs exist under the construction given to our statute, the remedy is with the legislature, if they believe such mischiefs can be removed without the introduction of others arising out of a change of provisions in the law.

The will is approved and allowed, and the case is to be remitted to the court of probate for further proceedings.